No. 45,982

CLARA M. KOEPP, *Appellee* and *cross-appellant*, v. JOHN D. PRIBYL, Executor of the Estate of Edward C. Koepp, deceased, and JOHN D. PRIBYL, individually, and LAURA PRIBYL, *Appellants* and *cross-appellees*.

(485 P. 2d 1388)

Opinion filed June 12, 1971.

*James C. Wright,* of Shaw, Hergenreter & Quarnstrom, of Topeka, argued the cause, and *William Hergenreter,* of the same firm, was with him on the brief for appellants and cross-appellees.

*John R. Hamilton,* of Crane, Martin, Claussen & Ashworth, of Topeka, argued the cause and was on the brief for appellee and cross-appellant.

The opinion of the court was delivered by

FATZER, J.: This is an appeal from summary judgment entered in favor of the plaintiff, Clara M. Koepp, and against the defendant, John D. Pribyl, executor of the estate of Edward C. Koepp, deceased, in the amount of $37,500, together with interest, which was made a lien on real estate owned by the decedent in his lifetime, which he transferred to Laura Pribyl, his daughter.

This controversy arises out of the construction of a property settlement agreement entered into on August 9, 1966, between Edward C. Koepp and Clara M. Koepp, husband and wife. The parties had been married many years, and had three daughters, one of whom is Laura Pribyl. During their marriage Edward and Clara accumulated a large amount of property—approximately 2200 acres of Marshall County real estate of the appraised value

of $278,000, and stocks, bonds, certificates of deposit, and cash in banks.

Prior to August 1966, the parties separated and Clara moved to a nursing home at Council Grove. Edward continued to reside in the former home of the parties in Marshall County. While at the nursing home, Clara employed Mr. Marlin Brown, an attorney at Council Grove, to represent her in securing a property settlement agreement with Edward.

About that same time, Edward employed Mr. William M. Shaffer, an attorney at Frankfort, who entered into negotiations with Clara's attorney, and prepared a property settlement agreement for the parties. Paragraph 9, hereafter referred to, prohibiting gifts or transfers by either party subsequent to January 1, 1966, was placed in the agreement at Edwards request, or the request of John D. Pribyl and Laura Pribyl, or all of them. Edward signed the agreement on August 3, 1966, and the document was forwarded to Mr. Brown at Council Grove. Certain changes were made in the agreement on behalf of Clara by her attorney, specifically, the deletion of the phrase "since January 1, 1966" so as to bring any prior gifts or transfers by Edward or Clara into the terms of the agreement, and, as amended, the agreement was returned to Mr. Shaffer.

On August 9, 1966, the interested parties met in Shaffer's office to execute the agreement. Edward agreed to the changes made by Clara, and signed the agreement. Brown signed the agreement on behalf of Clara who was not present. After the terms of the agreement had been carried out by assigning the real and personal property to each of the parties as agreed upon, Edward conveyed all of the real estate assigned to him under the agreement to his daughter, Laura.

In December, 1966, some four months after the parties had made settlement pursuant to the property settlement agreement, it was learned that Edward, over a period of years beginning in 1954, had transferred various certificates of deposit amounting to $75,000 to "John or Laura Pribyl." The proceeds of the certificates were placed in the joint checking account of John or Laura Pribyl, or reissued in their names as joint tenants, or expended by them from the joint checking account.

Paragraph 9 of the agreement reads:

"9. It is further agreed and understood that if either party hereto has made any gift or transfer of property or money, or rights to any money or property, to any of their children, any such gift or transfer shall be included in

the total of property owned. Provided, however, that if either of said parties shall have made any such gift or transfer to any of their children, and if such party shall fail to reveal said gift or transfer when settlement is made between said parties, then upon discovery of such gift or transfer, if made within two (2) years from the date thereof, said party failing to make known such gift or transfer hereby agrees that judgment may be entered against him or her, for a sum equal to one-half of such gift or transfer, together with interest thereon at the rate of six (6%) percent per annum from the date of such gift or transfer until paid, and in addition a sum equal to twenty-five (25%) percent of the amount of such gift or transfer as punitive damages, and court costs; and it is agreed that a court of competent jurisdiction shall adjudge and decree such amounts to be a lien against the real estate allotted to such party under provisions of this agreement, until paid."

In addition to the terms of paragraph 9, and under paragraph 1 of the agreement it is stated that the parties "will fully inform and disclose to the other their complete financial status without reservation." In paragraph 4 the parties stated that it was their intention "to make an equal division of all properties owned by them, regardless of how title to said property is held; and, in order to carry out and effectuate their purpose and intent the value of all property shall be determined and fixed as herein set forth." In paragraph 8 the parties stated that "they will disclose all information concerning their financial dealings where all funds are kept or deposited, or otherwise held, and that they will not hide or secrete, nor attempt to divert any money or property from being included in the list of property owned, as contemplated by this agreement."

John Pribyl testified by deposition that over a period of years he performed certain work for Edward for which he did not receive wages and that Edward gave him the certificates of deposit. He also testified he never received any gift or property from Edward, except one grain check. He further testified he paid no income tax on the amount involved, but as conservator of Edward's estate, he eventually paid $31,000 in gift tax on the certificates.

As indicated, the prohibition against gifts or transfers contained in paragraph 9 was originally limited to transfers subsequent to January 1, 1966, but at Clara's insistence, was altered in the final draft to include any gift made to any of their children at any time previous to the execution of the agreement. In any event, Edward did not disclose his transfers of $75,000 in certificates of deposit as contemplated by the foregoing paragraphs of the agreement, although there was evidence of an inquiry directed to Ed-

ward, John and Laura at the meeting in Shaffer's office on August 9, 1966, as to whether Edward had made gifts of any consequence or sizable amounts to anyone. Edward did not reply, and John and Laura answered in the negative.

The appellee contends that when read in its entirety, the property settlement agreement reflects the parties' intention to make an equal division of all their property; and in making such division, to include any gifts or transfers made by them prior to the execution of the agreement. She further contends she is entitled to one-half of the $75,000 previously transferred by Edward, plus six percent interest from the date of each transfer.

With respect to interpretation of the terms of the agreement and in the light of the intention of the parties existing at the time it was entered into, the meaning attributed to the provisions is what a reasonable person would have understood them to mean under the then existing conditions and circumstances. The purpose of the contract, so as to carry out the intention of the parties, is to be arrived at by considering and construing the instrument in its entirety. (*First National Bank of Lawrence v. Methodist Home for the Aged,* 181 Kan. 100, 309 P. 2d 389.) In 17 Am. Jur. 2d, Contracts, § 243, p. 630, it is said:

"Common sense and good faith are the leading characteristics of all constructions of contracts, and the rules for the interpretation of contracts are intended for persons of common understanding . . . It is the substance of an agreement rather than its form—that is, the spirit and purpose rather than the letter of the agreement—which must control its construction."

It is further said:

"In construing or interpreting contracts and ascertaining the intention of the parties thereto, the contracts are to be considered in the frame of reference of their subject matter, their nature, and their object or purpose. The spirit and purpose of a contract, as well as its letter, must be regarded in the construction and effectuation thereof, and there can be no doubt that the court may look beyond the form into which the parties have cast their agreement . . . The subject matter and the purpose of the contract are material to the ascertainment of the intention of the parties and the meaning of the terms they used, and when these are ascertained, they must prevail over the dry words of the agreement. If the general purpose of a contract is ascertained, the language of its provisions must be construed with reference to that purpose and so as to subserve it. It is always of much importance in the construction of a contract upon which doubt arises to ascertain what was the attitude of the parties to the subject and to find out what was their main purpose and object in making it. If this can be done, the terms of the contract will be so

construed as to promote the main purpose, if the language employed will fairly permit such construction . . ." (§ 246, pp. 635-637.)

In *Wiles v. Wiles,* 202 Kan. 613, 452 P. 2d 271, it was said:

"A cardinal rule in the construction of contracts is that they must be interpreted in light of their own peculiar provisions, and every provision must be construed, if possible so as to be consistent with every other provision and to give effect to all. (Citation.) If a contract is clear and unambiguous, the terms thereof must be construed in such manner as to give effect to the intention of the parties at the time they entered into the contract, and this must be determined from the four corners of the instrument itself. (Citation.)" (l. c. 619.)

The appellants do not deny the transfers were made and not disclosed to the appellee, or to the parties' attorneys at the meeting on August 9, 1966, when the agreement was finalized and a division of property made. They attempt to escape a fair and equitable division on the ground the transfers were to a son-in-law, and argue that paragraph 9 did not specifically mention the magic word son-in-law, and was in limitation of the prior statements of intention. A reading of the agreement does not support the contention. The agreement reflects the intention of Edward and Clara to make even division of property they jointly acquired during their marriage. Its object and purpose was to require each of them to disclose all information with respect to financial dealings previously made, and not to hide, or secrete, or attempt to divert any money or property from being placed on the table in plain view, so to speak, and to make even division of their entire joint accumulations. Paragraph 9 merely implemented and reiterated that obvious intention, and was intended to prevent either party from making gifts or transfers of property without a disclosure and a division of the value thereof.

The appellee perfected a cross-appeal from the district court's denial of interest on one-half of the aggregate amount of the gifts computed from the date of each transfer. The district court held:

". . . the judgment of $37,500.00 shall not bear interest at the rate of six per cent (6%) per annum from the dates of the respective transfers of said Certificates of Deposit for the reason that the provision in the contract of that effect is in the nature of a penalty and void. This judgment shall bear interest on the sum of Thirty-seven thousand five hundred dollars ($37,500.00) from August 9, 1966, through June 30, 1969."

The cross-appellant concedes the parties cannot contract for punitive damages, and that the provision for punitive damages in the amount of 25 percent of the transfers is void. Such a provision provides for a penalty to pay a stipulated sum on the breach of a con-

tract irrespective of the damages actually sustained. However, she contends she is entitled to six percent interest computed from the date of the transfers, claiming that such interest should be allowed to determine the present dollar value of the property previously disposed of.

The parties, by their contract, specified the value to be assigned the property for purposes of making an equal division. That is, since such property which was previously disposed of is to be included for purposes of distribution, it is to be included at its present value—"one-half of such gift or transfer, together with interest thereon at the rate of six (6%) percent per annum from the date of such gift . . ."

The cross-appellees were afforded the use and control of the property which was held in their names and which was enhanced in value by virtue of interest payments. The parties saw fit, and did, contract to include such property under the terms of the agreement at its present value, and agreed on the method by which the value of the gifts were to be calculated. Property settlement agreements fairly and understandingly made, just and equitable in their provisions, free from fraud, deceit and overreaching, are valid and enforceable, and are to be liberally interpreted to carry out the intention of the makers. (*In re Estate of Gustason,* 173 Kan. 619, 622, 250 P. 2d 837, 34 A. L. R. 2d 1014.) The district court erred in failing to award the cross-appellant interest at six percent per annum from the dates of the respective transfers of the certificates of deposit.

Other contentions have been advanced by the parties, but in view of the court's conclusions heretofore stated, it is unnecessary to discuss and decide them. The judgment of the district court is affirmed with respect to the appeal, and is reversed with respect to the cross-appeal, and remanded with directions to compute interest in accordance with the views expressed in the opinion.