Robert Kellock MYERS, Individually and as Co-Executor of the Estate of Anne S. Myers, Deceased, and Vincent A. Theisen, as Co-Executor of the Estate of Anne S. Myers, Deceased, Plaintiffs Below, Appellants,

v.

Jane D. MYERS and Wilmington Trust Company, Co-Executors of the Estate of Robert C. Myers, Deceased, Defendants Below, Appellees.

Supreme Court of Delaware.

Submitted June 12, 1979.

Decided Oct. 5, 1979.

John G. Mulford and William S. Gee, of Theisen, Lank, Mulford & Goldberg, Wilmington, for plaintiffs-appellants.

Donald W. Booker, Wilmington, for defendants-appellees.

Before HERRMANN, C. J., DUFFY and HORSEY, JJ.

HERRMANN, Chief Justice:

This is an appeal from the Court of Chancery's grant of summary judgment in favor of the defendants in an action for specific performance of a provision of a separation agreement entered into in 1963 between Robert C. Myers and his wife Anne.

I.

Paragraph 11 of the agreement, the provision in controversy, stated:

"11. The husband agrees to maintain the life insurance presently outstanding in his name and he further agrees to name the wife as beneficiary of fifty per cent (50%) of the amount of life insurance outstanding on October 31, 1963, irrevocably."

The agreement also provided for the support and maintenance of Anne during Robert's lifetime. Soon after the agreement, the parties were divorced.

At the time the agreement was executed, Robert held life insurance in the face amount of approximately $147,500. Anne died in 1971, leaving her estate by will to her son Robert K. Myers as sole beneficiary. After Anne's death, Robert C. changed the name of the beneficiary of the insurance policies involved to that of his second wife, Jane. Robert C. died in 1975, survived by Jane.

The plaintiffs, Robert K. and his co-executor of Anne's estate, contend that paragraph 11 of the separation agreement created a vested interest in Anne; that, therefore, paragraph 11 requires that one-half of the proceeds of the policies be paid to Anne's estate. The defendants, Jane and her co-executor of the estate of Robert C., on the other hand, contend that the parties did not intend Anne to take a vested interest in the insurance proceeds; that, rather, it was intended that the policies be kept in force for Anne's benefit during her lifetime in order to provide funds in lieu of the support payments, set forth in the agreement, if she survived Robert C.

The Court of Chancery held that the word "irrevocably" in paragraph 11 created an ambiguity when read in the light of the whole separation agreement; and the Court concluded that Robert C. intended Anne to be beneficiary under paragraph 11 only if he predeceased her. The Court reached this conclusion upon the basis of (1) the support provisions set forth in the agreement; (2) the action of Robert C. in making Jane beneficiary after Anne's death; (3) the retention of the policies by Robert C. with Anne's consent; and (4) the failure of Robert C. to name Robert K. as third-party beneficiary.

## II.

■ As a general rule, an unconditional contract between an insured and a named beneficiary that the designation shall be irrevocable grants the beneficiary a vested interest in the insurance proceeds. *Murphy v. Travelers Insurance Company,* 534 F.2d 1155 (5th Cir. 1976); *Lengel v. Lengel,* N.Y. Supr., 86 Misc.2d 460, 382 N.Y.S.2d 678 (1976); *Waxman v. Citizens National Trust & Savings Bank,* Cal.Dist.Ct.App., 123 Cal. App.2d 145, 266 P.2d 48 (1954); *Mutual Life Insurance Company v. Franck,* Cal.Ct.App., 9 Cal.App.2d 528, 50 P.2d 480 (1935). And, as a general rule, an "irrevocable" * grant by contract of beneficial rights in an insurance policy removes the insured's power to change the beneficiary, the power to make such change reserved in the policy itself notwithstanding; the power is generally deemed waived by the contract. *Couch on Insurance* § 27:64 (2d ed. 1961).

■ A valid separation agreement qualifies as such contract. The effect of an "irrevocable" grant of insurance beneficial rights by a valid separation agreement is to vest the beneficiary's interest in the proceeds, so that any attempt by the insured to change the beneficiary without the latter's consent is null and void. *Hundertmark v. Hundertmark,* Pa.Supr., 372 Pa. 138, 93 A.2d 856 (1953); *Mutual Life Insurance Company v. Franck, supra.*

## III.

■ We conclude as a matter of law that Anne's interest vested by virtue of the clear and unambiguous use of the term "irrevocably" in paragraph 11 of the separation agreement here under consideration. In the absence of ambiguity, there is no room for interpretation or a search for the intent of the parties. Accordingly, we must hold

---

* Black's Law Dictionary defines "irrevocable" as that "which cannot be revoked or recalled." *Black's Law Dictionary* 963 (4th ed. 1968).

that the Court of Chancery erred in interpreting paragraph 11 in the light of its version of what the parties intended.

 The Court of Chancery weighed against paragraph 11 the language of paragraph 4 of the separation agreement which provided for monthly support payments to Anne during her lifetime as long as Robert C. lived; but, the provision went on, if he predeceased her, the payments were only guaranteed for five years from the date of the agreement. The Court of Chancery concluded from the terms of paragraph 4 that paragraph 11 was meant to provide Anne a means of support in lieu of support payments if Robert C. predeceased her, but was not intended to be given effect should Anne predecease Robert C. We conclude, however, that in the absence of ambiguity or irreconcilable conflict of provisions, it was inappropriate to construct a theory of the parties' intent contrary to the plain language of paragraph 11. 17 Am.Jur.2d *Contracts* § 242 (1964). The Trial Court read into paragraph 11, after the word "irrevocable", the words "so long as Anne shall live" as the intent of the parties which must be implemented. We cannot agree.

While it is important for a court to look to the overall content and purpose of a contract when interpreting a clause therein, *Hudson v. D & V Mason Contractors, Inc.*, Del.Super., 252 A.2d 166 (1969); 17 Am. Jur.2d *Contracts* § 245 (1964); 3 *Corbin on Contracts* § 549 (1960), in order to make sure that the meaning it upholds would not disturb that purpose, *Koepp v. Pribyl*, Kan. Supr., 207 Kan. 478, 485 P.2d 1388 (1961), no conflict or ambiguity arises from reading together paragraphs 11 and 4 of this agreement. We see no reason to assume that paragraph 11 concerning life insurance proceeds was a support provision to be interpreted in conjunction with the support measures set forth in paragraph 4. Rather, as we see it, paragraph 11 addressed an

item of property and divided that asset of the marriage equally between the parties, in the same manner as the parties' real property, bank account, and bonds were divided.

Since there was neither ambiguity in language nor conflict in purpose, the Trial Court was simply called upon to give effect to the parties' agreement as stated. This it failed to do.

\* \* \* \* \* \*

It follows from this analysis that Anne's vested interest in the insurance proceeds passed to her estate as a personal asset when she predeceased Robert C. The latter's attempt to divest Anne's interest was ineffective. *Anderson v. North Dakota Trust Company*, N.D.Supr., 69 N.D. 571, 288 N.W. 562 (1939). Compare *Couch on Insurance*, § 27:130 (2d ed.) (1961).**

\* \* \* \* \* \*

Reversed.

---

** "[I]n the absence of a reservation to change or name additional beneficiaries, the original beneficiary designated in the policy of life insurance has a vested interest, in consequence of which his predecease does not destroy that vested interest, the proceeds of the policy are payable to his estate, and the insured cannot designate a new beneficiary in his stead. The proceeds of insurance will accordingly pass as part of the deceased beneficiary's estate . . . . "