Douglas N. PEARSON Plaintiff,

v.

EXIDE CORPORATION,
et al., Defendants.

Alan E. Gauthier Plaintiff,

v.

Exide Corporation, et al., Defendants.

Nos. CIV. A. 99–4104, CIV. A. 99–4134.

United States District Court,
E.D. Pennsylvania.

April 19, 2001.

Kenneth G. Roberts, Lowenthal, Landau, Fischer and Bring, P.C., New York City, Jonathan D. Wetchler, Melissa E. Lea, Wolf, Block, Schorr and Solis-Cohen, Philadelphia, PA, for Douglas N. Pearson.

Richard L. Strouse, Raymond A. Quaglia, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, Kenneth E. Kraus, Veronica Gomez, Schopf & Weiss, Chicago, IL, for Exide Corporation and Exide Corporation Group Insurance Plan.

Jeffrey S. Saltz, Philadelphia, PA, for Alan E. Gauthier.

Jeffrey S. Saltz, Melissa E. Lea, Wolf, Block, Schorr and Solis-Cohen, Philadelphia, PA, for Alan E. Gauthier.

Richard L. Strouse, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, William G. Schopf, Jr., Schopf & Weiss, Chicago, IL, Raymond A. Quaglia, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, Kenneth E. Kraus, Veronica Gomez, Schopf & Weiss, Chicago, IL, Patrick J. Jeneghan, Mary Katherine Danna, Schopf & Weiss, Chicago, IL, for Exide Corporation.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Presently before the court is plaintiffs' motions for partial summary judgment or, alternatively, preliminary injunction to require the advancement of litigation expenses for four different lawsuits and one upcoming criminal prosecution. Plaintiffs Douglas N. Pearson ("Pearson") and Alan E. Gauthier ("Gauthier"), former officers of defendant Exide Corporation ("Exide"), a Delaware incorporated company, seek advancement of litigation expenses pursuant to the bylaws of Exide ("Bylaws") as well as an indemnification agreement ("Indemnification Agreement") which was entered into between Gauthier and Exide.

Plaintiffs argue that Delaware law compels a finding that they are entitled to the advancement of litigation expenses for all lawsuits and criminal proceedings arising from their former roles as officers of Exide. Plaintiffs further assert that this conclusion is supported by the language of Exide's Bylaws as well as Gauthier's Indemnification Agreement. These documents provide in essence that Exide officers and directors, upon presentation of a written claim, are entitled to an advancement of expenses for litigation relating to their duties which they did not initiate and for which they have made an undertaking that they will repay in the event that a court determines that they are not entitled

to indemnification. Plaintiffs claim that they submitted written claims and that they have agreed to repay the advancement of expenses if a court of competent jurisdiction ultimately determines that they are not entitled to indemnification. Therefore, plaintiffs conclude that the court should require Exide to pay these litigation expenses either by granting them their motions for partial summary judgment or entering a preliminary injunction against Exide.

Defendants counter that under the plain language of the Bylaws of Exide as well as Gauthier's Indemnification Agreement, the parties are not entitled to advancement of litigation expenses. Defendants assert that the Bylaws and Gauthier's Indemnification Agreement specifically provide that no advancements are allowed for litigation initiated by the plaintiffs and also prevents advancements unless plaintiffs initiated a separate suit seeking recovering of such advancements. In addition, Exide claims that even if the language of the Bylaws and the Indemnification Agreement permitted advancements, plaintiffs are not entitled to either summary judgment or a preliminary injunction because plaintiffs' engaged in alleged wrongful and *ultra vires* conduct which precludes such advancements.

The parties do not dispute that Delaware law applies in this case and they have relied principally on Delaware case law. The court agrees that Delaware law applies in this diversity action.

The court finds that plaintiffs are entitled to summary judgment declaring that, under Exide's Bylaws, plaintiffs have a contractual right to an advancement of litigation expenses, upon presentation of a written claim, for litigation which they did not initiate and for which they have given an undertaking to repay if it turns out that plaintiffs are not entitled to indemnification. The court also concludes that the Bylaws do not recognize an exception to the duty to advance litigation expenses based on alleged wrongful or *ultra vires* conduct. Accordingly, Exide is directed to pay plaintiffs all litigation expenses incurred in connection with lawsuits, whether civil or criminal, in which plaintiffs are named parties and which plaintiffs did not initiate, and for which plaintiffs have submitted a written claim itemizing the expenses and have presented an undertaking that they will repay the advancement if it turns out plaintiffs are not entitled to indemnification. Defendants are also ordered to continue the advancement until the litigation is completed by the entry of a final, non-appealable judgment or by settlement.

## I. BACKGROUND

Until Pearson and Gauthier were terminated from Exide in the latter half of 1998, they worked as officers of Exide. Prior to leaving Exide, Pearson was the President of North American Operations and Gauthier was Chief Financial Officer. At the time of their termination, Exide's Bylaws provided for indemnification as well as advancements for litigation for all of its corporate officers.

Article V of Exide's Bylaws sets forth the contractual rights that current and former officers and directors have for both indemnification and advancement of litigation expenses. Article V, section 1 of the Bylaws provides the terms for indemnification for officers and directors.[1] Article V,

---

1. Article V, section 1, reads in relevant part:

   *Section 1. Right to Indemnification*

   Each person who was or is made a party or is threatened to be made a party to or is otherwise involved in any action, suit or proceed-

section 2, provides the terms for entitlement to advancement of litigation expenses for an officer or director.[2] Article V, section 3 provides the means for enforcement of an officer or director's right to indemnification or advancement of expenses.[3] In

ing, whether civil, criminal, administrative, or investigative (hereinafter a "proceeding"), by reason of the fact that he or she is or was a director or an officer of the corporation or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust, or other enterprise, including service with respect to an employee benefit plan ("hereinafter an "indemnitee"), whether the basis of such proceedings is alleged action in an official capacity as a director, officer, employee or agent or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the corporation to the fullest extent authorized by the Delaware General Corporation Law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the corporation to provide broader indemnification rights than such law permitted the corporation to provide prior to such amendment), against all expense, liability and loss (including attorneys' fees, judgment, fines, ERISA excise taxes or penalties and amounts paid in settlement) reasonably incurred or suffered by such indemnitee in connection therewith; provided, however, that, except as provided in Section 3 of this Article V with respect to proceedings to enforce rights to indemnification, the corporation shall indemnify any such indemnitee in connection with a proceeding (or part thereof) initiated by such indemnitee only if such proceeding (or part thereof) was authorized by the Board of Directors of the corporation.

2. Article V, section 2, reads as follows:

*Section 2.   Right to Advancement of Expenses*
The right to indemnification conferred in Section 1 of this Article V shall include the right to be paid by the corporation the expenses (including attorney's fees) incurred in defending any such proceedings in advance of its final disposition (hereinafter an "advancement of expenses"); provided, however, that, if the Delaware General Corporation Law requires, an advancement of expenses incurred by an indemnitee in his or her capacity as a director or officer (and not in any other capacity in which service was or is rendered by such indemnitee, including, without limita-

tion, service to an employee benefit plan) shall be made only upon delivery to the corporation of an undertaking (hereinafter an "undertaking"), by or on behalf of such indemnitee, to repay all amounts so advanced if it shall ultimately be determined by final judicial decision from which there is no further right to appeal (hereinafter a "final adjudication") that such indemnitee is not entitled to be indemnified for such expenses under this Section 2 or otherwise.   The rights to indemnification and to the advancement of expenses conferred in Sections 1 and 2 of this Article V shall be contract rights and such rights shall continue as to an indemnitee who has ceased to be a director, officer, employee, or agent and shall inure to the benefit of the indemnitee's heirs, executors, and administrators.

3.   Article V, Section 3 reads as follows:

*Section 3.   Right of Indemnitee to Bring Suit*
If a claim under Section 1 or 2 of this Article V is not paid in full by the corporation within sixty (60) days after a written claim has been received by the corporation, except in the case of a claim for an advancement of expenses, in which case the applicable period shall be twenty (20) days, the indemnitee may at any time thereafter bring suit against the corporation to recover the unpaid amount of the claim.   If successful in whole or in part in any such suit, or in a suit brought by the corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the indemnitee shall be entitled to be paid also the expense of prosecuting or defending such suit.   In (i) any suit brought by the indemnitee to enforce a right to indemnification hereunder (but not in a suit brought by the indemnitee to enforce a right to an advancement of expenses) it shall be a defense that, and (ii) in any suit brought by the corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the corporation shall be entitled to recover such expenses upon a final adjudication that, the indemnitee has not met any applicable standard for indemnification set forth in the Delaware General Corporation law.   Neither the failure of the corporation (including its Board of Directors, independent legal counsel, or its stockholders) to have

addition, on May 31, 1995, Gauthier entered into an indemnification agreement with Exide which essentially tracked the terms of indemnification and advancements of litigation expenses as laid out in the Bylaws.

Near the time that each plaintiff was terminated from Exide, both Pearson and Gauthier signed Separation Agreements with Exide, which provided them with compensation, health care, and long-term disability. Since Pearson and Gauthier's termination, Exide has made allegations of fraud against the plaintiffs and has argued that the Separation Agreements are null and void. Exide, therefore, stopped further payments as set down in the Separation Agreements. The alleged corporate improprieties of Pearson and Gauthier has become the subject of several lawsuits and criminal prosecutions involving plaintiffs since the summer of 1999.

The first litigation involving plaintiffs began in the Eastern District of Michigan when the former Chief Executive Officer of Exide, Arthur M. Hawkins, filed a claim against the corporation for breach of a Separation Agreement. On July 9, 1999, Exide filed a counterclaim against Hawkins for fraud, breach of fiduciary duty, misappropriation of corporate assets, and civil conspiracy. In its counterclaim, Exide joined Pearson and Gauthier as additional counterclaim defendants. The gist of Exide's counterclaim was that Pearson and Gauthier had committed fraud against Exide in securing their respective Separation Agreements with Exide. On February 16, 2000, Pearson and Gauthier were dismissed from the case by agreement of the parties.

In August 1999, Pearson and Gauthier filed separate actions against Exide in this court ("the Pennsylvania Action"). Although Pearson and Gauthier's claims are not identical, both Pearson and Gauthier essentially assert claims for breach of contract regarding the Separation Agreements. On November 3, 1999, Exide filed separate answers to Pearson and Gauthier's respective complaints. Along with its answers, Exide included counterclaims against the plaintiffs, alleging fraud, breach of fiduciary duty, and misappropriation of corporate assets. The thrust of all these allegations is that Pearson and Gauthier's alleged fraudulent conduct rendered their respective Separation Agreements null and void. On November 16, 2000, Pearson and Gauthier filed amended complaints in which they included a claim for advancement of litigation expenses with respect to all the litigation brought against them.

A third lawsuit was brought by Exide in the Circuit Court of Cook County, Illinois ("Cook County Action") against Sears, Roebuck and Company. Sears filed a counterclaim against Exide. On December 17, 1999, Exide filed a third-party claim against Pearson and Gauthier. In Exide's third-party complaint against Pearson and Gauthier, Exide asserted a

made a determination prior to the commencement of such suit that indemnification of the indemnitee is proper in the circumstances because the indemnitee has met the applicable standard of conduct set forth in the Delaware General Corporation Law, nor an actual determination by the corporation (including its Board of Directors, independent legal counsel, or its stockholders) that the indemnitee has not met such applicable standard of conduct or, in the case of such a suit brought by the indemnitee, be a defense to such suit. In any suit brought by the indemnitee to enforce a right to indemnification or to an advancement of expenses hereunder, or brought by the corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the burden of proving that the indemnitee is not entitled to be indemnified, or to such advancement of expenses, under this Article V otherwise shall be on the corporation.

claim for indemnity against Pearson and Gauthier. On October 16, 2000, the court granted Pearson and Gauthier's motion to dismiss the third-party complaint, based on the pendency of the complaint filed with this court.

A fourth action began on June 26, 2000 when Johnson Controls, Inc. and Johnson Controls Battery Group, Inc. commenced an action against Exide, Pearson, and Gauthier, alleging violations of the Robinson–Patman Act and RICO, as well as tortious interference with prospective business opportunity in the Northern District of Illinois ("the Illinois Action"). On December 5, 2000, the court ordered a stay of all proceedings in the case, based on criminal investigations that had begun against both Pearson and Gauthier.

On October 3, 2000, Gauthier received a target letter from an Assistant United States Attorney in the Southern District of Illinois. The target letter indicated that possible criminal charges might arise from Gauthier's dealings with Sears. On March 22, 2001, Exide pled guilty to charges arising out of consumer fraud and illegal gratuity payments made by Exide to a Sears' employee. On March 23, 2001, both Pearson and Gauthier were indicted by a federal grand jury in the Southern District of Illinois for wire fraud and mail fraud due to their alleged participation in Exide's consumer fraud and illegal gratuity payments.

In short, of all the civil and criminal actions involving the plaintiffs, one was voluntarily brought by plaintiffs, the Pennsylvania Action, while the others, both civil and criminal, plaintiffs were involuntarily brought into the legal controversy.

Shortly after the Michigan Action began, Gauthier sent a letter to Bernard F. Stewart, then the Secretary of Exide, invoking his rights to indemnification and the advancement of legal expenses, under both Article V of the Bylaws and under the Indemnification Agreement, with respect to the Michigan Action. In the letter dated July 29th, 1999, Gauthier expressly undertook to repay all amounts advanced to him by Exide if it should ultimately be determined by final judgment of a court of competent jurisdiction that he is not entitled to be indemnified. Exide never responded to the letter, so Gauthier sent a second letter to Exide requesting advancement of legal expenses with respect to the proceedings in the Pennsylvania Action, the Cook County Action, and the Michigan Action. On April 13, 2001, Gauthier's counsel sent invoices for $43,333.06 for legal fees and expenses from the Pennsylvania, Cook County, and Michigan Actions. In letters dated September 27, 2000 and November 15, 2000, Gauthier requested that Exide provide advancements for litigation expenses arising out of the Illinois Action and the criminal investigation.

On August 14, 2000, Pearson sent a letter to John Van Zile, the Corporate Secretary of Exide, invoking his rights to indemnification and the advancement of legal expenses with respect to the Michigan, Pennsylvania, Cook County, and Illinois Actions. In the letter, Pearson expressly undertook to repay all amounts advanced to him by Exide if a court of competent jurisdiction made a final determination that he is not entitled to be indemnified. On November 16, 2000, counsel for Pearson sent a letter to Exide requesting advancement with respect to the United States Attorney's Office investigation and reasserted his undertaking to repay all amounts advanced in accordance with the Bylaws. Although outlining the cases for which Pearson sought advancement of litigation expenses, Pearson never sent an invoice detailing the costs of defending Pearson in these actions.

In written correspondence to both Pearson and Gauthier, Exide refused to advance legal expenses to Pearson. Although the record does not include Exide's response to Pearson's request, Exide's letter to Gauthier, dated May 10th, 2000, asserts that it is not required to advance Gauthier's expenses because he had engaged in "ultra vires and unauthorized conduct" in breach of his duties to Exide and had failed to act in good faith and in a manner that he reasonably believed to be "in or not opposed to the best interests of the corporation." The letter also contended that Exide had no obligation to advance Gauthier's expenses in the Pennsylvania Action because it was initiated by Gauthier and, therefore, under the Bylaws, required the authorization of the Board of Directors of the Corporation.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) is designed to secure a just, speedy and inexpensive determination of cases before they proceed to trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is genuine only if the evidence is such that a reasonable jury could find for the non-moving party. *Id.* at 251, 106 S.Ct. 2505. In making this determination, a court must draw all rea-

sonable inferences in favor of the non-movant. *See Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). Summary judgment should be granted if no reasonable trier of fact could find for the non-moving party. *See id.; Radich v. Goode,* 886 F.2d 1391, 1395 (3d Cir.1989).

In interpreting Exide's Bylaws, the court's "analysis starts with the principle that the rules which are used to interpret statutes, contracts, and other written instruments are applicable when construing corporate charters and bylaws." *See Hibbert v. Hollywood Park, Inc.,* 457 A.2d 339, 342–43 (Del.1983) (citing *Ellingwood v. Wolf's Head Oil Refining Co.,* 38 A.2d 743, 747 (Del.Supr.1944)); *Lawson v. Household Finance Corp.,* 152 A. 723, 726 (Del.Supr.1930); *In re Osteopathic Hospital Assoc.,* 191 A.2d 333, 335 (Del.Ch.1963). "[I]f the bylaw is unambiguous in its language, [the court] do[es] not proceed to interpret it or to search for the parties' intent behind the bylaw." *Id.* at 343 (citing *Nepa v. Marta,* 415 A.2d 470 (Del. Supr.1980); *Myers v. Myers,* 408 A.2d 279 (Del.Supr.1979)). The court should only interpret "the bylaw as it is written, and ... give language which is clear, simple, and unambiguous the force and effect required." *Id.* (citing *Hajoca Corp. v. Security Trust Co.,* 25 A.2d 378 (Del. Supr.1942).

## III. ANALYSIS

Delaware law permits Delaware corporations to provide for the indemnification of its officers and director. *See* Del.Code Ann. tit 8, § 145.[4] Delaware confers this

---

4. Subsections (a)and (b) of section 145 state in pertinent part:
   A corporation shall have power to indemnify any person who was or is a party or is threat-ened to be made a party to any threatened, pending or completed action ... by reason of the fact that the person is a director, officer, employee or agent of the corporation.

power onto corporations whether or not the suit was initiated by a third party or by the corporation itself. *See id.* 145(a), (b). The power to provide indemnification is generally within the discretion of the shareholders or other disinterested directors. *See id.* § 145(d). Delaware law permits indemnification only if the director or officer acted in good faith and in a manner that he reasonably believed to be in the best interests of the corporation. *See id.* § 145(a), (b). In a separate section of Section 145, the statute also provides for the advancement of expenses, including attorney's fees. *See id.* § 145(e).[5]

Whereas Delaware law specifically states that indemnification is permissible "only as authorized in the specific case" by disinterested directors or shareholders, *see id.* § 145(d), there is no such requirement for advances of expenses under section 145(e).[6] In interpreting section 145(e), Delaware courts have consistently found that a corporation may bind itself in advance, through its bylaws or by contract, to advance the costs of litigation incurred by present or former directors or officers. *See Kapoor v. Fujisawa Pharm. Co.*, No. C.A. 93C–06–50, 1994 WL 233947 (Del.Super.1994) (noting corporation can make advancement of legal fees mandatory by agreement); *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 823 (Del.1992) (finding

corporation made advancements for legal expenses "mandatory" by "providing [in agreement] that expenses shall be paid in advance"); *Dunlap v. Sunbeam Corporation*, No. CIV.A. 17048, 1999 WL 1261339 (Del.Ch. July 9, 1999) (finding corporation's bylaws requires the advancement of expenses, including legal fees).

■ In this case, it is clear that Exide, pursuant to section 145(e), has voluntarily provided to corporate officers and directors an entitlement to advancements of litigation costs. Article V, section 2 of the Bylaws states that "[t]he right to indemnification conferred in Section 1 of this Article V *shall* include the right to be paid by the corporation the expenses (including attorney's fees) incurred in defending any such proceedings in advance of its final disposition." This section further provides that "[t]he rights to indemnification and to the advancement of expenses conferred in Sections 1 and 2 of this Article V shall be contract rights" which continue beyond an officer or director's term of employment at Exide. Finally, Article V, section 3 outlines the means of enforcement of the right to advances through legal action against the company. Therefore, the Bylaws clearly establish a mandatory right to the advancement of litigation expenses [7]

---

Del.Code Ann. tit. 8, § 145(a), (b).

**5.** Section 145(e) reads as follows:

Expenses (including attorneys' fees) incurred by an officer or director in defending any civil, criminal, administrative or investigative action, suit or proceeding may be paid by the corporation in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the corporation as authorized in this section. Such expenses (including attorneys' fees) incurred by former directors and officers or other employees and agents may be so paid

upon such terms and conditions, if any, as the corporation deems appropriate.
Del.Code Ann. tit. 8, § 145(e).

**6.** In fact, prior to 1986, section 145(e) did state that advancements of expenses may only occur "by the board of directors in the specific case," but the statute was amended to eliminate this requirement.

**7.** Although the court does not rely on the Indemnification Agreement for its holding that the Bylaws create a mandatory right to the advancement of litigation expenses, the language in that agreement further supports the court's ruling with respect to Gauthier. Gauthier's Indemnification Agreement stated

■ The court further finds that, under the Bylaws, the alleged wrongful or *ultra vires* conduct of Pearson and Gauthier does not excuse Exide from satisfying its requirement to provide advancement of litigation expenses for which the plaintiffs are otherwise entitled. Article V, Section 3 specifically states that in "any suit brought by the indemnitee to enforce a right to indemnification hereunder (*but not in a suit brought by the indemnitee to enforce a right to an advancement of expenses*) it shall be a defense that . . . the indemnitee has not met any applicable standard for indemnification set forth in the Delaware General Corporation law." (emphasis added). The applicable standard appears in Section 145 which states that an officer or director is entitled to indemnity "if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe the person's conduct was unlawful." *See* Del. Code Ann. tit 8, § 145(a). Because Exide may not invoke this standard as a defense to Pearson and Gauthier's claim for advancement of litigation expenses, Exide's argument that Pearson and Gauthier are not entitled to such advancements because of their alleged wrongful or *ultra vires* conduct fails.

■ Next, the court must determine whether the litigation for which Pearson and Gauthier seek advancements are covered under Article V, section 2 of the Bylaws and whether Pearson and Gauthier have followed the appropriate procedures for enforcing their mandatory right to advancements. In order for there to arise a duty to advance litigation expenses, the officer must show (1) that the litigation was commenced by another party, or was commenced by the plaintiff with authorization of the Board of Directors; (2) that a written claim has been made and (3) that an undertaking of repayment in the event that plaintiff is ultimately determined not be entitled to indemnification has been presented.

Article V, section 2 provides for the advancement of expenses for "any . . . proceeding . . ." Article V, section 1 broadly defines "proceeding" as "any action, suit, or proceeding, whether civil, criminal, administrative or investigative (hereinafter a 'proceeding')." However, the mandatory right to advancement of litigation expenses is limited to only those proceedings "initiated" by someone other than the director or officer himself, i.e., where the director has been involuntarily brought to court. In situations where the director or officer initiates the litigation, the corporation only is required to indemnify the director or officer "if such proceeding (or part thereof) was authorized by the Board of Directors or the corporation."

In addition, Article V, sections 2 and 3 detail certain procedures that a party must follow before Exide will provide an advancement of litigation expenses. First, section 2 states that:

> [A]n advancement of expenses incurred by an indemnitee in his or her capacity as a director or officer . . . shall be made only upon delivery to the corporation of an undertaking . . . by or on behalf of such indemnitee, to repay all amounts so advanced if it shall ultimately be determined by final judicial decision from which there is no further right to appeal that such indemnitee is not entitled to be indemnified for such expenses under this Section 2 or otherwise.

that Exide "shall advance" sufficient amounts to cover Gauthier's litigation expenses.

Finally, Article V, section 3 also requires that a director or officer who is seeking advancement of expenses file a written claim for such an advancement. In the event that Exide declines to satisfy in full the demand for advancement of litigation expenses, the director or officer may commence a suit to compel payment.

With respect to the first requirement that the plaintiffs show that they did not initiate the litigation, the court finds that the plaintiffs were involuntarily brought into the Michigan Action, Cook County Action, Illinois Action, and the criminal proceedings. In all those actions, the plaintiffs were, or are, defending claims brought against them for their "alleged action[s] in an official capacity ... or in any other capacity while serving as ... officer[s]." Bylaws, Article V, section 1.

In addition, the court finds that the Pennsylvania Action is also a "proceeding" that Exide "initiated" and, therefore, meets the first requirement for demonstrating entitlement to advancements of litigation expenses. The court bases this conclusion on several factors. First, the central issue involved in the Pennsylvania Action, the enforceability of the Separation Agreements in light of the alleged fraudulent conduct of the plaintiffs, was first initiated by Exide in the Michigan Action when Exide joined Pearson and Gauthier in its counterclaims against Hawkins. In fact, the counterclaims brought by Exide in the Pennsylvania Action are virtually identical to the counterclaims brought against Pearson and Gauthier in the Michigan Action. By choosing to challenge the enforceability of the Separation Agreements in the Michigan Action, before any suit on the part of Pearson and Gauthier to enforce those agreements, Exide initiated the proceeding which is now before this court.

Second, the Delaware Supreme Court has broadly interpreted the words "in defending" as used in a contract provision concerning the advancements of litigation expenses. In *Citadel,* 603 A.2d at 824, the Delaware Supreme Court found that, because compulsory counterclaims meet the definition of a "defense" for litigation purposes, a corporate officer was entitled to advancements for litigation expenses arising from those counterclaims. In reaching this result, the *Citadel* court stated that "any [compulsory] counterclaims asserted by [plaintiff] are necessarily part of the same dispute and [are] advanced to defeat, or offset, the [corporation's] claim" against him. *Id.* at 824. Based on the broad interpretation of the words "in defending" in *Citadel,* the court finds that Pearson and Gauthier's claims in the Pennsylvania Action, which were filed in response to the litigation begun by Exide in Michigan, are equally defensive in nature as the counterclaims asserted by plaintiff in *Citadel.* This conclusion is demonstrated by the fact that the same claims asserted by Pearson and Gauthier in the Pennsylvania Action, if asserted in the Michigan Action, would have been compulsory counterclaims under Federal Rule 13(a) of the Federal Rules of Civil Procedure. To put it another way, the court concludes that it was Exide who first put at issue in a legal forum the question of Pearson and Gauthier's alleged fraudulent conduct with respect to the Separation Agreements.

In finding that the plaintiffs are entitled to litigation expenses arising from the Pennsylvania Action, the court rejects Exide's argument that allowing advancements with respect to the Pennsylvania Action will open a floodgate of litigation from other officers who wish to file claims against the corporation. Exide is adequately protected by the fact that its current and former officers are only entitled to advancements of litigation expenses if

another party initiates the litigation against the officer. Furthermore, under *Citadel*, Exide is only required to advance litigation expenses for claims brought by an officer or director which could have been asserted as compulsory counterclaims to previously-filed claims commenced by Exide against the officer or director.[8]

■ As to the second requirement that a plaintiff must show before an entitlement to advancements of litigation expenses arises, the court finds that Pearson and Gauthier have not filed proper written claims for the advancements they seek. Pearson, for example, has never provided an expense sheet specifically enumerating the litigation expenses for which he seeks advancements. Gauthier, although providing such an expense sheet for the Michigan, Pennsylvania, and Cook County Actions, never provided such an expense sheet for the other litigation expenses for which he now seeks advancements. Therefore, although plaintiffs are entitled to the advancements, they have not yet complied with the requirement that a written claim regarding the expense be submitted to Exide.

■ Finally, with respect to the third requirement that the plaintiff must show, the court finds that plaintiffs have extended to Exide an undertaking to repay any advancements received from Exide. In their letters requesting advancements of litigation expenses, Pearson and Gauthier clearly expressed their intent to reimburse Exide for these advancements in the event that it is determined that they are not entitled to indemnification.

Therefore, the court finds that, although Pearson and Gauthier have satisfied the first and third requirements for obtaining advancement of litigation expenses under the Bylaws of Exide, they have failed to comply with the second requirement. Consequently, the court concludes that until Pearson and Gauthier provide a detailed, itemized invoice of the expenses for the Michigan, Pennsylvania, Cook County, and Illinois Actions, as well as the criminal proceedings, Exide has no obligation to provide advancements. Once Pearson and Gauthier submit such invoices, Exide will then have an opportunity to review those invoices and, in the event that Exide finds, in good faith, particular litigation expenses which are unreasonable, they can file objections to those specific unreasonable expenses. *See Citadel*, 603 A.2d at 823–24 (noting that corporation "is not required to advance unreasonable expenses but is required to advance reasonable ones"). Exide, however, must provide advancement of litigation expenses for all items for which it does not object. The court will hold a hearing on Exide's objections, if any.

## IV. CONCLUSION

■ In conclusion, the court finds that plaintiffs are entitled to partial summary judgment declaring that, under Exide's Bylaws, plaintiffs have a contractual right to an advancement of litigation expenses, upon presentation of a written claim, for the Michigan, Pennsylvania, Cook County, and Illinois Actions as well as criminal proceedings. In reaching this conclusion, the court finds that Pearson and Gauthier have met the requirements under the Bylaws that they not initiate any of the litiga-

---

**8.** It should be noted that, even assuming that the Pennsylvania Action was initiated by the plaintiffs, Pearson and Gauthier would still be entitled to an advancement of litigation expenses in defending against plaintiffs' counterclaims in the Pennsylvania Action. Furthermore, under Article V, section 3, Pearson and Gauthier are entitled to be reimbursed the costs of prosecuting their respective claims for advancement of litigation expenses brought in the Pennsylvania Action.

tion in question and that they present Exide with an undertaking to repay any amounts advanced in the event that it is ultimately determined that they are not entitled to indemnification. However, the court finds that Pearson and Gauthier have not satisfied the requirement that they present a written claim, including a detailed invoice outlining all the expenses for which they seek advancements. Before Exide has an obligation to provide advancements, Pearson and Gauthier must present these invoices to Exide. The court further finds that, in the event that Pearson and Gauthier submit such invoices, Exide is entitled to review them and object, in good faith, to any expenses they find unreasonable. Meanwhile, Exide must provide advancement of litigation expenses for all items for which it does not object.

An appropriate order follows.

### ORDER

**AND NOW,** this **19th** day of **April, 2001,** upon consideration of plaintiffs' motions for partial summary judgment, or in the alternative, preliminary judgment for the advancement of litigation expenses (docs. no. 12 and 71), it is hereby **ORDERED** that:

1) Plaintiffs' motions for partial summary judgment are **GRANTED,** the court declaring that, under the Bylaws, plaintiffs are entitled to an advancement of litigation expenses, upon presentation of a written claim, for the Michigan, Cook County, Illinois, and Pennsylvania Actions, as well as the criminal proceedings;

2) Plaintiffs shall submit to Exide appropriate written claims, including detailed invoices outlining the expenses for which they seek advancements by **April 30, 2001;**

3) By **May 9, 2001,** Exide shall file objections, if any, to litigation expenses that Exide claims are unreasonable;

4) By **May 9, 2001,** Exide shall advance the litigation expenses for which Exide does not object.

**AND IT IS SO ORDERED.**