107 A.2d 635 (1953)
SAFE HARBOR FISHING CLUB, a Delaware corporation, Plaintiff
v.
SAFE HARBOR REALTY COMPANY, a Delaware corporation, and Harry A. Fisher, Defendants.
Court of Chancery of Delaware, Kent County.
August 13, 1953.
*636 William H. Foulk and Edward W. Cooch, Jr., Wilmington, for plaintiff.
Arley B. Magee, Jr., Dover, and Vincent P. Desmond, Chester, Pa., for defendants.
BRAMHALL, Vice Chancellor.
On April 26, 1947, defendant Safe Harbor Realty Company, a corporation of the State of Delaware, and Safe Harbor Fishing Club, of the City of Chester, State of Pennsylvania, entered into a written agreement providing for the sale by the realty company to the fishing club of certain land bordering on the Delaware Bay, in Kent County, near a place known as Pickering Beach, designated on the plot as 541 lots, a parking lot 700 feet long and 100 feet wide, and a tract of land on the shore of the Delaware Bay to be used as a club house. The agreement provided as a consideration for the sale of said lots that the plaintiff would pay to the corporate defendant the sum of $2,000; that the plaintiff would dredge a canal or creek and a basin for boats; that it would erect at the mouth of the creek a club house; that it would gravel the streets "that are laid out on the plot plan they are purchasing", and would pay to the corporate defendant 50% of the sale of each lot until the said sum of $2,000 was fully paid to the corporate defendant; that in default of said agreement the plaintiff would forfeit all work done on said property as liquidated damages.
Prior to the execution of said agreement the corporate defendant had acquired title to certain real estate in Kent County for a real estate development. A part of the tract was laid off in lots and streets. Several plots were made of this land, one plot being recorded with the office of the recorder of deeds, at Dover. Defendant Harry A. Fisher, who with his wife and son constitute all of the stockholders of the corporate defendant, conceived the idea of creating a fishing club on a part of his tract and selling lots to the members of the fishing club, with the thought that the fishing club would make certain necessary improvements to the property with the money received from the sale of those lots. As a result of Fisher's efforts a fishing club was formed and later incorporated under the laws of this state. A great many of the 541 lots were sold. The fishing club proceeded to gravel some of the streets. A contract was let by the fishing club for the dredging of the canal and yacht basin. It developed that the gravel and sand excavated in the dredging of the canal and yacht basin was not sufficient to erect a road leading to the proposed site of the club house. A request was made of Fisher by certain of the officers of the fishing club that the site of the club house be transferred from the site shown on the plot to the parking space. In the meantime restrictions had been placed on all of the lots included in the agreement, with the exception of the proposed club house site, prohibiting the sale of intoxicating liquors. An effort was made to remove this restriction against the parking lot by securing the consent of all of the owners of the lots. This effort was not successful. For some reason nothing further was done about the development of the tract. No effort was made to erect a club house at the club house site on the shore of the Delaware Bay or to construct a road leading to it. The members of the fishing club contended that it was unreasonable for defendants to require plaintiff to erect a club house on this site since because of the marshy condition of the land piling would have to be driven six or eight feet before solid ground could be reached. Objection was also made on the ground that it would be impossible to erect a club house at the club house site because there was no road leading to it.
Plaintiff has requested that defendants be ordered and directed to construct a road leading to the club house site; that defendants return to plaintiff the sum of $6,500 which plaintiff spent in dredging the canal and yacht basin and that defendant corporation be directed to perform its obligations pursuant to the agreement of April 26, 1947.
The parties entered into a written agreement, in which the obligations of all the *637 parties were set forth. While in some instances,  such as lack of specifications as to the type of club house to be erected on the club house site and the manner in which the streets were to be constructed,  the contract is not specific, and while, in others, certain obligations of the parties may have been omitted, it is not disputed that the contract is binding upon both the parties. At the time of the execution of the contract there was, and is now, no road leading to the club house site. The written agreement is silent as to the construction of the road. It is clear that all parties anticipated that one would be constructed. Plaintiff contends that its construction was the obligation of defendant corporation and in support of that contention calls attention to the testimony of the defendant Fisher. I do not agree with plaintiff's construction of Fisher's testimony in this respect. This witness testified that it was the general understanding that the road was to be constructed by plaintiff from the gravel and dirt excavated in the digging of the canal and yacht basin. While the witness did state that if he had the money he would build a road, there is nothing in his testimony to indicate that he ever definitely agreed to do so. The dirt obtained from the excavating work was not sufficient for the building of the road. After an attempt by plaintiff to change the site of the club house from the original club house site to the parking lot proved futile, nothing was ever done to construct a road or to construct a club house on the club house site.
Plaintiff contends that it was relieved from its duty to erect a club house on the club house site by reason of the excessive cost which would be entailed in the erection of a club house on that site and by reason of the serious difficulty, if not impossibility, of moving materials to the club house site in the absence of the construction of the road. Plaintiff entered into a binding contract. At the time of the execution of the agreement there was no road leading to the club house site. From the testimony of the various witnesses it was obvious that a road leading to the site of the proposed club house would have to be constructed. Nevertheless, plaintiff executed an agreement which contained nothing relative to the construction of the road or as to whose responsibility its construction would be.
Plaintiff is asking for specific performance of the contract. At the same time it is in default as to an important obligation which it agreed to perform, namely, the erection of a club house on the club house site. Unless plaintiff is excused from the performance of this obligation, it should not be permitted to have specific performance. In the case of Peckham v. Industrial Securities Co., 1 W.W.Harr. 200, 113 A. 799, 801, Chief Justice Pennewill, quoting the leading case of Dermott v. Jones, 2 Wall. 1, 17 L.Ed. 762, in pointing up the grounds upon which a person may be relieved from an obligation under a contract, said:
"`It is a well settled rule of law, that if a party by his contract charge himself with an obligation possible to be performed, he must make it good, unless its performance is rendered impossible by the act of God, the law, or the other party.'"
Plaintiff relies upon impossibility of performance and breach of the contract by the defendants in failing to construct the road. As to the road, I find no specific or implied obligation on the part of the defendants to construct it. It is undisputed that the excavation of the canal and yacht basin were to be at the expense of plaintiff and that the dirt obtained therefrom was to be used in the construction of the road. If there had been sufficient dirt obtained from the excavation work to use for the road, the cost of constructing the road would have been materially reduced. The difficulty arose when it was found that the dirt obtained was not sufficient for the purpose of making a roadbed. As the matter now stands, in order for work to proceed on the development as planned, it probably would be necessary to haul dirt for the purpose of making a roadbed. Plaintiff's inability to haul materials to its yacht club site by reason of the lack of a road does *638 not make plaintiff's obligation to erect a club house on the club house site impossible of performance: it merely increases the difficulty and expense. I therefore do not find that the defendant corporation has breached the agreement by reason of its failure to construct the road.
Plaintiff contends that in order to build a club house at the club house site it would be necessary to drive piling for a foundation for the building. There is testimony, which is not disputed, to the effect that this could be accomplished by using short piling for the foundation. This of course would increase the cost of the erection of the club house. It would not make the obligation of plaintiff to construct the club house impossible of performance.
Mere inconvenience or substantial increase in the cost of compliance with a contract, though they might make compliance a hardship, cannot excuse a party from the performance of an absolute and unqualified undertaking to do a thing that is possible and lawful. Courts cannot alter contracts merely because they work a hardship. A contract is not invalid, nor is the obligor therein in any manner discharged from its binding effect, because it turns out to be difficult or burdensome to perform. See cases cited in 12 Am.Jur., Contracts, Sec. 362, p. 928, n. 8. Mere inability to perform a contract will not alone relieve the defaulting party. Williams v. Armour Car Lines, 7 Pennewill 275, 79 A. 919. Accepting the testimony offered by plaintiff, it amounts, at most, to a substantial increase in cost of the erection of the club house by reason of necessity of using piling and by reason of the necessity of constructing a road to the club house site. As far as the club house site is concerned, it was a marshy formation. It was therefore obvious to plaintiff at the time of the execution of the contract that there might be considerable difficulty in erecting a club house on that site. Sufficient dirt for the construction of the road was not provided as a result of the excavation of the canal and yacht basin. It would be necessary in order to construct a road to haul additional dirt thereon. Admittedly, there is hardship, serious inconvenience, and a substantial increase in cost involved, but nothing more. I conclude that the erection of the club house on the club house site is not impossible of performance.
Plaintiff has asked this court to decree specific performance of the contract. Specific performance is a matter of grace and not of right and rests in the sound discretion of the court. That power will not be exercised in favor of a complainant who fails to show either substantial performance on his part or that he offered to discharge the duty imposed upon him by his contract. Capital Bakers, Inc. v. Leahy, 20 Del.Ch. 407, 178 A. 648. See 4 Pomeroy's Equity Jurisprudence, (5th Ed.), Sec. 1407, p. 1050. Plaintiff has failed to comply with the terms of the contract between the parties providing for the construction of a club house at the club house site. This is a default in a substantial obligation of the plaintiff as set forth in the contract. Since plaintiff is in default in this material respect, specific performance will not be decreed.
Plaintiff at the trial and at the oral argument requested this court to decree that defendants execute and deliver to plaintiff, or to the individual purchasers of lots, deeds for all lots paid for. Plaintiff contends that the written agreement between plaintiff and corporate defendant provides that the lots purchased by members of the fishing club shall be conveyed by the corporate defendant to the fishing club. The practice was for the corporate defendant to convey directly to the individual purchaser. Since it is stipulated by defendants in the record that deeds will be executed and delivered for all such lots paid for up to and including April 26, 1951, the date stipulated in the notice of default, it will be unnecessary for me to determine at this time the rights of the plaintiff with respect to these lots.
An order will be signed, upon notice, in accordance with this opinion.