Harold W. HUDSON and Ethel V. Hudson, his wife, Plaintiffs,

v.

D & V MASON CONTRACTORS, INC., Defendant.

Superior Court of Delaware.

New Castle.

March 20, 1969.

Peter J. Walsh, Connolly, Bove & Lodge, Wilmington, for plaintiff.

Aubrey B. Lank, Theisen & Lank, Wilmington, for defendant.

OPINION

O'HORA, Judge.

On June 5, 1967, plaintiffs entered into a contract with defendant-contractor which called for construction of a house at a price of $17,400.00. Settlement was tentatively set for sometime in October, 1968. The contract was drawn on a standard, printed form.

In May, 1968, plaintiffs were informed that completion of the house would be delayed until mid-1969. In August, 1968, plaintiffs were informed that the house could not and would not be completed at the contract price, but could be completed at a price of $1,500.00 in excess thereof. Plaintiffs refused to pay the additional $1,500.00. Offers of similar style houses on different lots for $500.00 above the contract price were also rejected and plaintiffs instituted an action for breach of contract.

The matter now before the Court is defendant's motion to dismiss based upon impossibility of performance under the terms of the contract. As grounds for excusing performance under the terms of the contract, defendant cites the following factors:

1. Interest on construction financing has increased from 6% as of June 1, 1967, the contract date, to 7% as of October, 1968, the date on which the motion to dismiss was filed.

2. "Points" required to be paid by the builder-seller in connection with an F.H.A. mortgage increased from 4 points (i. e. 4% of the mortgage) on the contract date to as high as 11 points and in October, 1968 the figure stood at 5 points.

3. Construction costs increased 10–15% during the period from June, 1967 to October, 1968.

4. Help was generally available within the building industry in June, 1967, and is "almost unavailable" now, particularly in the fields of masonry, painting and carpentry.

The contract terms under which defendant argues his performance is excused are paragraphs 13 and 23. Paragraph 13 provides:

"If for any reason Seller's title is not good and marketable and Seller shall be unable to perfect such title, or if for any other reason Seller is *unable to construct or complete* said premises or make title *as herein provided,* Seller shall return to the Purchaser the sum or sums paid on account of the purchase price, without interest, and this agreement shall thereupon become cancelled, null and void, and the Seller shall have no further liability whatsoever to Purchaser." (Emphasis added).

Paragraph 23 provides:

"This agreement is conditioned upon the *ability* of Seller *to complete* the above described property under conditions similar to those presently existing in the home building industry. If Seller is unable to procure promptly, as and when needed, labor and material required for construction as aforesaid, or if Seller for any reason cannot complete these premises due to any present or future rules, regulations or restrictions (particularly those involving priorities or material allocation) by the federal, state or municipal governments, or their agencies, then, and in any *such* event, Seller is hereby given the option to cancel this contract upon written notice to Purchaser, in which event the full deposit money shall be returned to Purchaser without interest, and this agreement shall thereupon become cancelled, null and void, and Seller shall have no further liability whatsoever to Purchaser." (Emphasis added).

Defendant argues that the quoted paragraphs of the contract permit the Seller to cancel further performance for any reason which he deems to be sufficient. Even if these provisions may be viewed as ambiguous and theoretically capable of the broad interpretation defendant suggests, the contract must nonetheless be construed against him. It is a fundamental rule of construction that ambiguities must be resolved against the one who chose the language used and, further, that an interpretation should be adopted if possible, so that the contract will not be found illusory. 17

Am.Jur.2d, Contracts, § 276; 3 Corbin on Contracts, § 546 (1960).

In this instance, however, no rules of interpretation need be employed since the language of the contract appears to have clear meaning. Futhermore, the factors cited by defendant do not appear to constitute an excuse of performance within the meaning of paragraph 13 and 26.

Paragraph 13 refers to inability to construct or complete the premises "as herein provided". Use of the phrase "as herein provided" calls special attention to the cardinal rule that one paragraph in a contract, cannot be read in isolation, but must be read within the context of the entire instrument. 3 Corbin on Contracts, § 549 (1960). The inability to perform referred to in paragraph 13 must, therefore, be consistent with the inability to perform set forth in more detail in paragraph 26.

Paragraph 26 states that the agreement is conditioned upon Seller's ability to complete the premises under conditions similar to those then existing in the home building industry. Defendant reads the paragraph as if it stops at that point and concludes that cost considerations are necessarily part of the "similar conditions" that must exist before he will be bound to complete his job. Defendant ignores the fact that immediately following the first sentence of paragraph 26 there is an enumeration of the specific conditions previously referred to, followed by the statement that "in any such event" the Seller has the option to cancel. "Such events" enumerated do not include the kind of cost considerations cited by defendant as grounds to excuse performance. Unavailability of labor and materials and existence of rules and regulations making completion impossible are the only factors which will excuse performance under paragraphs 13 and 26 of the contract. Nowhere does the contract say that increased cost to the Seller will excuse performance.

It is well established that:

"Mere inconvenience or substantial increase in the cost of compliance with a contract, though they might make compliance a hardship, cannot excuse a party from the performance of an absolute and unqualified undertaking to do a thing that is possible and lawful. Courts cannot alter contracts merely because they work a hardship. A contract is not invalid, nor is the obligor therein in any manner discharged from its binding effect, because it turns out to be difficult or burdensome to perform." Safe Harbor Fishing Club v. Safe Harbor Realty Co., 34 Del. Ch. 28, 107 A.2d 635 (1953).

Contractual provisions attempting to qualify an undertaking in the face of increased cost considerations should be more specific in reference to such factors than was the case here before parties can be held to have contractually modified or altered existing law.

The first three "cost" factors cited by defendant are, therefore, quite clearly not grounds to excuse performance within the meaning of the contract. The fourth factor presents a somewhat different problem. Here defendant relies upon a change in availability of labor. However, an allegation of scarcity of labor in the home building industry, generally, falls far short of a showing that defendant itself was particularly and substantially affected and thus unable to complete performance.

Since defendant has not presented valid grounds to excuse its performance under the contract, its motion to dismiss on that basis should be denied.

In addition, defendant argues that the complaint is defective for failure to allege that plaintiffs are "ready, willing, and able to perform" and the action, therefore, should be dismissed. In an action for specific performance a plaintiff must show

that he stands "ready, willing, and able" to perform. 4 Pomeroy's Equity Jurisprudence, § 1407 (5th ed.). The action here, however, is for breach of contract, not for specific performance. As a general rule the party first guilty of a material breach of contract cannot complain if the other party subsequently refuses to perform. 17 Am.Jur.2d, Contracts, § 365. Under such rule, an allegation of future readiness to perform seems wholly unnecessary. All that the plaintiff must show is freedom from fault with respect to performance of dependent promises, counterpromises or conditions precedent. 17 Am.Jur.2d, Contracts, § 441. In alleging in paragraph 3 of the complaint that they have "duly performed all conditions of said contract on their part to be performed", plaintiffs have sufficiently alleged all that is required of them in a breach of contract action with respect to pleading their own performance. Defendant's motion to dismiss based on an alleged defect in the complaint should, therefore, be denied as well.

For the reasons herein set forth, the Court concludes that defendant's motion to dismiss should be denied.

It is so ordered.