IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

EXECUTRIX of the ESTATE of      :
MARK BULLER                 :
                                   :
      Plaintiff,               :
                                   :
                                   :
v.                                  :      C.A. No. S18C-11-007 RFS
                                   :
PATRICK MONTAGUE,         :
                                   :
      Defendant.             :

## ORDER

Submitted: 12/19/2019
Decided: 3/2/2020

Patrick Scanlon, Esq., 203 NE Front Street, Suite 101, Milford, DE 19963, Attorney for Plaintiff.

Richard E. Berl, Jr., Esq., 34382 Carpenter's Way, Suite 3, Lewes, DE 19958, Attorney for Defendant.

## I.  INTRODUCTION

Before the Court is Defendant, Patrick Montague's ("Montague") Motion for Summary Judgment. For the reasons that follow, Montague's motion is **DENIED**.

## II. FACTUAL AND PROCEDURAL HISTORY

In 2016, Montague and Buller began discussions regarding forming a joint venture that eventually became Resort Professionals of Delaware, LLC ("the LLC") for real estate ventures. Montague was a real estate broker and his experience was to form the basis of the real estate sales. Buller would provide the financial backing. Montague and Buller also included Dawn

1

Marton ("Marton"), Buller's daughter, and Marton's significant other, Adam Mahew ("Mahew"). Montague, Buller, Marton, and Mahew would form the LLC with each owning an interest. Montague was the managing member and the owner of 52% and Buller, Marton and Mahew each had a 16% interest.

The Operating Agreement ("the Agreement") of the LLC laid out the plan for the LLC. Buller was to provide a line of credit and the Agreement provided that each of the members would be personally liable for repayment of any balance due on the line of credit. The Agreement also provided that Buller and Montague were required to each purchase "key man" life insurance in the amount of $250,000.00, naming the company as the beneficiary. The Agreement provided that:

> Patrick Montague and Mark Buller shall purchase a life insurance policy in the amount of $250,000.00 each within thirty (30) days of the execution of this Agreement. Said life insurance policy shall identify the Company as the beneficiary of the policy. Each Member shall provide evidence of the renewal of said policy annually. The Company shall reimburse the Members annually for the cost of said life insurance policies.[1]

The Agreement was signed December 27, 2016. Prior to the signing, Buller made loan advances, which were to be paid back when the LLC began earning commissions from sales. Because Buller provided the financing behind the LLC, concerns were raised as to any future advances on the line of credit should something happen to Buller. Buller had life insurance through his employer, St. Louis University. He and his wife executed an authorization that would allow the transfer of funds from the St. Louis insurance policy to the company to cover the balance on the line of credit. Buller never obtained the $250,000 policy.

On February 24, 2017, Buller died unexpectedly. His wife administered his Estate. There were four additional advances made on the line of credit following Buller's death, bringing the

---

[1] Def.'s Mot. Ex. C.

2

total advance to $120,005.00. The LLC never received the death benefit from the purported assignment of the St. Louis University life insurance. The LLC ultimately dissolved. The Agreement provided that each member would be personally liable for any balance based upon each member's percentage of interest in the LLC. The Estate of Buller ("Plaintiff") now brings this action seeking 52% of the total loaned amount, plus accrued interest.[2]

In November 2018, Plaintiff filed the complaint alleging that Montague was in default for non-payment of the account. The complaint alleges that Montague is personally liable to the Estate in the amount of $70,279.64 plus interest until the date of judgment. Montague has moved for summary judgment. Montague contends that Buller's failure to purchase the required life insurance policy excuses Montague's performance.

## III. PARTIES' CONTENTIONS

Montague argues that Buller's failure to purchase life insurance as required by the Agreement was a material breach and excuses Montague's performance. Montague also contends that Buller's purported assignment of another insurance policy, the St. Louis University policy, does not qualify as a substitute for Buller's required performance.

Montague also contends that, although Plaintiff claims there was an oral modification to the Agreement that eliminated the insurance policy requirement, no such change took place. Montague argues that the Agreement provides that modification required unanimous consent.

Montague also argues that his failure to obtain the policy himself does not excuse Buller's failure to obtain a policy. Montague, in response to Plaintiff's claim that he failed to obtain the required insurance himself, contends that he commenced the process of obtaining the required policy and his insurance company issued a rider to his policy for $250,000. Montague

---

[2] Montague was the owner of 52% of the company and Buller, Marton and Mahew each took a 16% interest.

contends that he commenced the process to satisfy his obligation under the Agreement before the Agreement was signed.

Plaintiff, in opposition to Montague's motion, argues that there was no material breach by Buller because neither Buller nor Montague obtained the policy by the specified date and there was no objection. Plaintiff contends that the fact there was no objection is evidence of the immateriality of the policy requirement. Plaintiff contends that because neither Buller nor Montague obtained the life insurance policy by the stated date with no complaints, it was either not material or it was waived by the words and actions of the parties because the LLC continued as if everything was fine. The LLC continued to draw on the line of credit and repay the debt.

Plaintiff also claims that all parties agreed that Buller could assign a portion of his existing insurance policy and no one objected to that as well. Plaintiff claims that at a January 13, 2017 meeting, there was an agreement that the $250,000 life insurance policy for Buller was too expensive and Buller would provide enough to fund the balance of $168,000 in the event of his death. Plaintiff further claims that at a January 20, 2017 meeting, Buller executed the assignment for enough of his life insurance policy to fund the line of credit.[3] Plaintiff also contends that Mahew and Marton will testify that the assignment was in lieu of obtaining the $250,000 policy and Montague was at that meeting and did not object.

Plaintiff contends that even if a provision in the Agreement allows changes only be in writing, changes may be oral; therefore, the oral modification is valid. Lastly, Plaintiff contends that Montague is estopped from arguing Buller's failure to get the required insurance because Montague, himself, did not get the required insurance by the deadline date. Therefore, both Buller and Montague would have breached at the same time.

---

[3] Montague claims this purported assignment was not in lieu of the $250,000 policy, but was in addition to an assignment of the existing policy to the LLC.

4

## IV. STANDARD OF REVIEW

Under Superior Court Civil Rule 56(c), a party is entitled to summary judgment if the moving party can show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[4] The party moving for summary judgment bears the initial burden of showing no material issues of fact are present.[5] When a moving party meets her initial burden of showing that no material issues of fact exist, the burden shifts to the nonmoving party to show that such issues do exist.[6] The facts must be viewed in a light favorable to the non-moving party.[7]

## IV. DISCUSSION

A party may be excused from performing if the other party is in material breach.[8] "Although a material breach may allow the non-breaching party to be excused from future performance, a non-material breach does not; instead, the non-breaching party may recover any damages that it can prove."[9] Montague claims that Buller materially breached the contract. Montague claims he has been deprived of a benefit, which he reasonably expected because his share of the Buller advances were to be paid by the life insurance proceeds. Furthermore, Buller's death eliminates any possibility to cure the default.

Plaintiff claims Buller's failure to obtain the insurance policy as required by the Agreement is not a material breach because there was an agreement among the members to have Buller assign a portion of his existing policy to cover the line of credit. It is well-settled Delaware law "that contract provisions deeming oral modifications unenforceable can be waived

---

[4] Super. Ct. Civ. R. 56(c).
[5] *Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979).
[6] Super. Ct. Civ. R. 56(c).
[7] *Guardian Const. Co. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378, 1381 (Del. Super. Ct. 1990).
[8] *BioLife Sols., Inc. v. Endocare, Inc.*, 838 A.2d 268, 278 (Del. Ch. 2003).
[9] *Commonwealth Const. Co.*, 2006 WL 2567916, at *19.

by a course of conduct."[10] However, "a party seeking to prove an oral modification bears a heightened evidentiary burden and must prove the intended change to the written agreement with sufficient 'specificity and directness as to leave no doubt of the intention of the parties to change what they previously solemnized by formal document.'"[11] Moreover, the LLC agreement provides that "no Member, without the prior written consent of all other Members, shall amend the Certificate of Formation or the Operating Agreement...."[12]

Plaintiff claims that neither Buller nor Montague obtaining the insurance is evident of the oral change. Moreover, in the draft minutes of the January 20, 2017 meeting, it provides the following: "Mark has a $144,000 life insurance policy with Saint Louis University. He will write a document stating that his estate will pay from his life insurance policy the residual owed on the $168,000 line of credit in the event of his death."[13] Plaintiff also claims that Marton, Buller's daughter, and Mahew will testify that the assignment of the existing policy was in lieu of getting the policy. Montague does not dispute that the members agreed to Buller's assignment; rather, he disputes that it was a waiver of the key man provision.

There is no writing evidencing the waiver of the key man provision, thus, this Court must determine whether Plaintiff's argument that an oral modification occurred meets the high evidentiary burden. The provision in the Agreement was unambiguous. It directed that each party be required to obtain a policy in the amount of $250,000.[14] It further directed each party to identify the Company as the beneficiary of the policy.[15] The minutes do not provide any

---

[10] *Peco Logistics, LLC v. Walnut Inv. Partners, L.P.*, 2015 WL 9488249, at *7 (Del. Ch. Dec. 30, 2015).
[11] *Tunney v. Hilliard*, 2008 WL 3975620, at *5 (Del. Ch. Aug. 20, 2008), aff'd, 970 A.2d 257 (Del. 2009) (quoting *Reeder v. Sanford School, Inc.*, 397 A.2d 139, 141 (Del.Super.1979)).
[12] Def.'s Mot. Ex. C.
[13] Pl.'s Answ. Ex. B.
[14] Def.'s Mot. Ex. C.
[15] *Id.*

evidence that Buller's assignment of the St. Louis insurance policy was in lieu of the existing obligation to obtain the policy directed in the Agreement.

The facts Plaintiff alleges do not rise to the level of "specificity and directness" required for this Court to enforce the alleged oral modification.[16] The facts asserted by Plaintiff demonstrate the expected assignment of Buller's existing policy; however, the facts do not demonstrate an agreement to substitute the existing policy for the $250,000 key man policy. Therefore, even when viewing the facts in the light most favorable to the Plaintiff, the Court does not find that Plaintiff has met the high evidentiary burden at this time.

Assuming arguendo that Plaintiff alleged specific and direct facts to support an oral modification, the modification lacked the consideration to be binding. "Any amendment to a contract, whether written or oral, relies on the presence of mutual assent and consideration."[17] "Delaware courts define consideration as a benefit to a promisor or a detriment to a promisee pursuant to the promisor's request."[18]

Here, the oral modification lacks consideration. Plaintiff alleges that the key man requirement was waived for Buller but the obligation on part of the members to repay their share of the line of credit remained unmodified. Plaintiff does not provide any form of consideration for the waiver.[19]

In *Continental Ins. Co. v. Rutledge & Co., Inc.*, the court determined that a preexisting duty, where the defendants already had an obligation before the alleged modification, defeated

---

[16] *See Cont'l Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1232 (Del. Ch. 2000).

[17] *Cont'l Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1232 (Del. Ch. 2000) (citing *DeCecchis v. Evers*, Del.Supr., 174 A.2d 463 (1961)).

[18] *Id.* at 1232.

[19] *See Merchantwired, LLC v. Transaction Network Servs., Inc.*, 2003 WL 21689647, at *2 (Del. Super. Ct. July 16, 2003) (the court provided that the complaint's failure to allege that an extension was supported by consideration was fatal).

the enforceability of the oral modification.[20] Here, Buller was required to obtain the life insurance policy to repay the line of credit prior to the alleged modification.[21] Buller had the preexisting obligation to provide a policy to cover the line of credit. Plaintiff has not provided any additional form of consideration for the waiver. Therefore, the alleged oral modification would still be unenforceable.

Even if the oral modification was enforceable, Buller did not complete the assignment so that the insurance proceeds were given to the LLC.[22] Therefore, even if the Agreement's insurance obligation was modified, Buller breached under both the original provision in the Agreement and the purported modification.

The issue then becomes whether the failure to obtain the required insurance is a material breach. Montague argues that this is a material breach, thus, excusing Montague's performance. "A party clearly in material breach cannot thereafter complain of the other party's failure to perform."[23] "Parties suffering non-material breaches are not excused from performance as they would be had they suffered a material breach."[24] If the failure to obtain the required insurance policy constitutes a material breach, Montague would be excused from performance and entitled to summary judgment.

"Materiality is, of course, a question of great specificity. It is a question of fact and one that is ordinarily not suited for summary judgment."[25] "However, if the facts are so obvious that

---

[20] *Cont'l Ins. Co.*, 750 A.2d 1219 at 1233.

[21] Neither the required key man policy nor the assignment of the St. Louis policy was ever completed.

[22] It is apparent that the assignment of Buller's existing policy through St. Louis University was never completed because the policy was never paid to the LLC. Joslyn Buller's ("Joslyn") deposition provides that it was Joslyn who was paid upon Buller's death, not the LLC. Def.'s Mot. Ex. A.

[23] *SLMSoft.Com, Inc. v. Cross Country Bank*, 2003 WL 1769770, at *13 (Del. Super. Ct. Apr. 2, 2003) (citing *Hudson v. D & v. Mason Contractors, Inc.*, 252 A.2d 166, 170 (Del.Super.1969)).

[24] *Clean Harbors, Inc. v. Union Pac. Corp.*, 2017 WL 5606953, at *4 (Del. Super. Ct. Nov. 15, 2017), *aff'd*, 201 A.3d 1161 (Del. 2019).

[25] *Pac. Ins. Co. v. Higgins*, 1992 WL 212601, at *6 (Del. Ch. Sept. 2, 1992).

reasonable minds cannot differ on the question of materiality, and the underlying facts and inferences to be drawn are free from controversy, the question becomes one of law, which may appropriately be decided by summary judgment."[26] It is undisputed that the Agreement's requirement of the key man policy was to prevent the members from being personally liable for the line of credit. What is disputed, however, is if the failure to obtain the policy excuses Montague from paying on the line of credit.

When considering whether a breach would justify nonperformance, the Chancery Court in *BioLife Solutions, Inc. v. Endocare, Inc.* stated:

> Non-performance by an injured party under such a circumstance operates as a breach of contract. The question whether the breach is of sufficient importance to justify non-performance by the non-breaching party is one of degree and is determined by weighing the consequences in the light of the actual custom of men in the performance of contracts similar to the one that is involved in the specific case.[27]

In addition, the Restatement (Second) of Contracts provides the following circumstances to consider when determining whether a breach is material:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.[28]

"Typically, whether a breach is material is a question of fact that cannot readily be resolved under the summary judgment standard."[29] Montague argues that he was deprived of the

---

[26] *Glassman v. Wometco Cable TV, Inc.*, 1989 WL 1160, at *2 (Del. Ch. Jan. 6, 1989).
[27] 838 A.2d 268, 278 (Del.Ch.2003).
[28] Restatement (Second) of Contracts § 241 (1981).
[29] *Matthew v. Laudamiel*, 2014 WL 5499989, at *2 (Del. Ch. Oct. 30, 2014).

benefit he reasonably expected. Montague reasonably expected that the advances on the line of credit would be paid by Buller's life insurance proceeds. In addition to the reasonable expectations of the parties, Montague argues that he has been deprived of any benefit the insurance policy would have provided. Buller's death means no policy can now be effected to comply with his obligation. Therefore, Montague contends that Buller's death makes any cure of the breach impossible. Plaintiff, in opposition, argues that the insurance provision was not material. Plaintiff contends that neither Montague nor Buller obtaining the policy by the date specified in the Agreement evidences the policy's immateriality. Plaintiff claims that the parties continued as if there was no breach. Although Montague argues that the factors fall in favor of him, whether the breach was material is a determination that involves issues of material fact, thus making summary judgment inappropriate.[30]

Finally, Plaintiff asserts that Montague is estopped from arguing Buller's failure to comply with the life insurance requirement because neither Montague nor Buller obtained the policy by January 26, 2017, Montague did not complain, and the LLC continued as if everything was fine. Montague began the necessary steps to obtain a $250,000 rider on his already existing policy in December 2016.[31] The rider was then approved in February 2017 and went into effect in March 2017.[32] Furthermore, Montague claims no demand was made because Buller's breach did not become germane until the instant suit was filed. However, whether Montague is estopped from asserting Buller's breach because of his acquiescence or his failure to obtain the insurance policy himself is a disputed issue of fact and cannot be decided on summary judgment.[33]

---

[30] *SLMSoft.Com, Inc. v. Cross Country Bank*, 2003 WL 1769770, at *13 (Del. Super. Ct. Apr. 2, 2003).
[31] Def.'s Mot. Ex. G.
[32] *Id.* Montague's Policy Fact Sheet provides that the Rider of $250,000 went into effect on March 1, 2017.
[33] *Devine v. MHC Waterford Estates, L.L.C.*, 2017 WL 4513511, at *3 (Del. Super. Ct. Oct. 10, 2017).

In *Devine v. MHC Waterford Estates, L.L.C.*, the Court of Chancery stated that the court has held that acquiescence:

> arises when a party complaining of an act (1) has full knowledge of his rights and all material facts and (2) remains inactive for a considerable time, or freely gives recognition to the act, or conducts himself in a manner inconsistent with any subsequent repudiation of the act, thereby leading the other party to believe that the act has been approved.[34]

Plaintiff alleges that Montague did not complain even though the insurance was not obtained by the specified date and carried on business as usual. Whether Montague's alleged actions constituted acquiescence such that Buller could reasonably believe that obtaining the key man insurance was no longer required is a factual issue not appropriate for summary judgment.

## VI. CONCLUSION

Considering the foregoing, Montague's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

Richard F. Stokes, Judge

---

[34] *Id.* At *3 (citing Tenneco Automotive Inc. v. El Paso Corp., 2004 WL 3217795, *12 (Del. Ch. Aug. 26, 2004)).